**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE:<br>GABBY RAE MASON f/k/a<br>GABBY RAE SEARS,<br><br>Debtor. | Case No. 26-12811-SAH<br>Chapter 7 |
| IAN'S ENTERPRISE, LLC<br><br>Plaintiff,<br>vs.<br><br>GABBY RAE MASON f/k/a<br>GABBY RAE SEARS,<br><br>Defendant. | Adv. Pro. ____________ |

## COMPLAINT

COMES NOW, Plaintiff Ian's Enterprise LLC, by and through its attorney Amanda R. Blackwood of Blackwood Law Firm PLLC, for its Complaint against Defendant / Debtor, Gabby Rae Mason f/k/a Gabby Rae Sears, alleges and states as follows:

1. Plaintiff is an Oklahoma limited liability company doing business in Oklahoma County, Oklahoma. Plaintiff is registered to do business in the State of Oklahoma.
2. Defendant resides in Newalla, Cleveland County, Oklahoma.
3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).
4. Venue is proper in this District pursuant to 28 U.S.C. § 1409.
5. This Complaint is timely filed before the deadline to object to dischargeability of debts under 11 U.S.C. § 523(c)(1) and F.R.B.P. 4007(c).

6. Pursuant to F.R.B.P. 7008, Plaintiff consents to the entry of final orders or judgment by the Court on any issue in this adversary proceeding.
7. In October 2020, Gabby Rae Mason f/k/a Gabby Rae Sears ("Defendant") and Tre Horner ("Tre") jointly rented a single-family home to occupy at 406 Mid America Blvd, Midwest City, OK 73110 ("Premises") from Lynn & Co. Property Management LLC ("Lessor") pursuant to a Lease.
8. On October 14, 2020, Defendant spoke with Lessor's representative by phone call to inquire about a house listed for rent.
9. During said call, Lessor's representative asked Defendant and she answered as follows:
    a. "Any evictions or felonies?" and "No."
    b. "What's the monthly income before taxes?" and "$2,400" as to Defendant then "2,600 to $3,000" as to co-applicant.
    c. "How soon are y'all wanting to move?" and "As soon as possible honestly."
    d. Defendant was advised she could apply and consented to receiving a message link for the application.
10. On October 19, 2020, Defendant applied along with Tre for tenancy with Lessor.
11. On October 20, 2020, Defendant spoke with Lessor's representative by phone call claiming there was technical issue with instant bank verification system and was instructed to submit three (3) months' bank statements instead, which she did.
12. On October 29, 2020, Defendant and Tre signed their Premises Lease with Lessor for a Term of October 30, 2020, thru February 28, 2023.
13. On October 29, 2020, Defendant and Tre signed their Premises applications with Lessor.
14. Said Premises applications were signed under penalty of perjury as true and correct.

15. Lessor reasonably relied on Defendant's Premises application in approving the tenancy and subsequent Note.

16. In her October 2020 application, Defendant represented as follows:

    a. "Employment status?" as "employed"

    b. "What is your COMBINED household income BEFORE taxes and insurance?" as "$6200" per "month"

    c. "How did you come up with the income claimed?" as "$21/hr-40hrs/wk $15/hr + $219 Every 2 weeks from Child Support from my Father"

    d. "Source(s) of your household income?" as "Gabby= $2,900 from being a nanny and child support from my father ,Tre=$3600 from DSR"

    e. "Have you ever been party to an eviction?" as "No"

    f. "Have you ever breached a lease, or been sued for non-payment of rent or damages?" as "No"

    g. "Occupants" as "Self" and "Tre Horner" her "fiance"

    h. "Address History" instructions "Please list your complete and accurate address history for the last 3 years. For residential applicants, provide the location where you physically lived throughout the last 3 years, present and prior address history." as:

        i. Address 1

            1) "15203 Patterson Rd Shawnee, OK 74801" from "04/16/2018 to 10/16/2020"

            2) "Landlord or Mortgage Name" as "Kaylon Labat"

            3) "Past due or under threat of eviction?" as "No"

            4) "If yes, explain all past due and eviction issues." as "n/a"

            5) "Address Type?" as "other" and "lived with family"

ii. Address 2

1) "20395 Palmer Rd., Shawnee, OK 73045" from "01/11/2013 to 03/11/2018"

2) "Landlord or Mortgage Name" as "Kaylon Labat"

3) "Past due or under threat of eviction?" as "No"

4) "If yes, explain all past due and eviction issues." as "n/a"

5) "Address Type?" as "other" and "lived with family"

i. "Cash, Account, Other Income, or Asset?" as "child support" from "dad" for "219 every two weeks"

j. "Employment History" instructions "Please list your 2 most recent years of employment and income starting with current employer."

i. Employer 1

1) "Employer name" as "Stacy Curtis"

2) "Employer address" as "5651 Old Town St, Newalla, OK 74801"

3) "Position held" as "nanny"

4) "Employment dates" as "03/29/2020 to 10/19/2020"

5) "Monthly gross salary" as "$2,400.00"

ii. Employer 2

1) "Employer name" as "Tara Goodson"

2) "Employer address" as "1650 Wagon Trail Rd, Harrah, OK 73045"

3) "Position held" as "Nanny"

4) "Employment dates" as "07/20/2017 to 08/20/2019"

5) "Monthly gross salary" as "$12.00" per hour

17. On December 31, 2020, Premises lessee Tre called and spoke with Lessor and represented as follows:

a. Defendant wasn't paying anything on the Lease or Premises.

b. Lessor advised Tre, "You can't just jet out." and Tre responded "I wasn't trying to jet out or anything. I was trying to like figure out what I was needing to do if I needed to pay anything because I wasn't trying to get caught up in anything she had because that whole time that she was telling y'all that she had a job and everything, I guess she didn't and she was lying to me the whole time too. So that's why we broke up because, because it came down to the fact that I was literally paying for everything."

c. Defendant had advised Tre that all was being taken care of with Lessor but Lessor informed Tre that the opposite was true, nothing was resolved.

d. When Lessor asked, "So this landlord [] that she owes, what is that about? Did she rent a place and not pay or what?" and Tre answered, "… she had a person living with her and she went, Gabby said she went to work and then that girl that was living with her stayed home and was supposed to be watching the dogs. Well, Gabby had two bigger dogs, like a King Corso and some other one. And she would lock the big dogs in the room and never let them out all day until Gabby got back home, I guess, and they like pooped and peed all over the carpet. So she, Gabby ripped the carpet up and was gonna replace it and never did. So she owed them like, I think it was like three grand or something like that. And she would always come to me because they were texting her, threatening to take her to court and I would give her the $100 to, that she had the deal set up with them and it was stupid."

18. On December 29, 2020, unbeknownst to Lessor, landlords Jerry Sanford and Lori Sanford filed suit by their sworn affidavit in the Pottawatomie County, Oklahoma District Court under SC-2020-740 against Defendant for over $4,700 described as “rent and damages to 199 Stone St, Dale, OK 74851”.
19. Despite having applied and signed a Lease with Lessor for the Premises, Defendant made no payment to Lessor whatsoever, nothing for the entire tenancy.
20. Lessee Tre submitted two (2) payments in the amount of $292 and both were dishonored for ‘balance not sufficient’. No payments were ever received by Lessor from Defendant and or Tre for the Premises.
21. On January 2, 2021, Lessor and Defendant and Tre executed a promissory Note for $9,100 as of December 30, 2020, payable in consecutive monthly installments of $300 commencing February 1, 2021.
22. Said Note was Lessor’s attempt at bringing an out-of-court, amicable resolution to the situation for Defendant and Tre, who benefited by avoiding an eviction on their record.
23. As of January 25, 2021, almost three (3) months after commencement, Lessor records reflect Defendant and Tre vacated the Premises.
24. Defendant and Tre made no payment whatsoever to Lessor on the Lease or Note, defaulting again by failing to pay February and March 2021 installments due.
25. On March 5, 2021, Lessor assigned the Note to Plaintiff.
26. On March 11, 2021, Lessor and Plaintiff sent Notices of Assignment to Defendant and Tre.
27. Plaintiff received no payments whatsoever from Defendant or Tre on the Note.

28. On October 14, 2022, Plaintiff accelerated the Note filed a petition in the Oklahoma County, Oklahoma District Court under CJ-2022-5092 seeking judgment in the amount of $9,100 plus interest, costs and attorney fees, pursuant to the Note.
29. On February 14, 2024, after procedural motion practice, Tre answered Plaintiff's petition.
30. On May 30, 2025, Tre filed his chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Western District of Oklahoma under 25-11638-JDL, and on September 8, 2025, Tre Horner was discharged from his debts, including Plaintiff's Note.
31. On July 15, 2025, the Court entered default judgment in CJ-2022-5092 against Defendant awarding Plaintiff the sum of $18,057.71 plus costs and contractual interest (10%) from June 4, 2025, until paid, based on $9,100 for principal plus $3,000 for attorney fees, $1,176.84 for costs and $4,780.87 for interest thru June 3, 2025.
32. Defendant made no voluntary payments to Plaintiff until after garnishing $1,651.21 from her bank account on or about October 15, 2025, of which Plaintiff refunded $300 by agreement, and then Defendant sporadically remitted only $631.78 across three (3) subsequent payments pursuant to a voluntary wage assignment over seven (7) months.
33. On or about May 15, 2026, Plaintiff visited Defendant in-person and requested she sign a Authorization to Release Information so Plaintiff could verify employment thru the Oklahoma Employment Security Commission, but Defendant declined and indicated she was about to file bankruptcy in a few weeks.
34. On May 15, 2026, Plaintiff made contact with Stacy Curtis, Defendant's prior employer, who advised Defendant terminated employment by September 2020, and was not presently employed in October 2020, as Defendant had sworn to on her Premises application to Lessor.

35. On May 26, 2026, Stacy Curtis, Defendant's employer, provided records responsive to Plaintiff's subpoena for cleared check copies, among other things. Within said response, Curtis confirms reporting $4,396 in compensation to Defendant in 2020 on IRS Form 2441.

36. Working backwards from the call details and income reported by Stacy Curtis, Defendant's sworn answers regarding this employer, $2,400 per month from March 2020 thru October 2020, are material and factually impossible.

37. On September 12, 2025, Navy Federal Credit Union provided records responsive to Plaintiff's subpoena for bank statements and cleared check copies, among other things. Within said response, cleared check copies from Stacy Curtis were provided and the latest one is dated September 3, 2020, for $222.18 with a memo "nanny 08/31-09/03" which was deposited September 3, 2020.

38. Defendant had used bank statements (into August 2020) which suggested Defendant was gainfully employed by Stacy Curtis as she swore to when she applied with Lessor, but this turned out to be false and was uncovered only because Plaintiff researched manually with the employer and by subpoena for more complete bank records.

39. On June 16, 2026, Plaintiff made contact with Tara Goodson, Defendant's prior employer, who advised Defendant worked a term of 1 to 2 months max, around fall of 2016, and definitely not two (2) years or in 2018 or 2019 as indicated on her Premises application.

40. Defendant intentionally falsified her employment dates on her Premises application to Lessor to conceal the following: a) short-time-in-job, b) inadequate income, c) recent termination, d) large employment gaps, e) financial instability, f) lack of employment at the time of application, and these fraudulent representations were material to Lessor's decision to approve the tenancy.

41. Had Defendant been truthful about the Stacy Curtis and or Tara Goodson employment relationships within her Premises application, Lessor would have declined Defendant's application for tenancy, avoiding the subsequent financial losses arising from the Lease and subsequent Note, which was later assigned to Plaintiff.

42. Plaintiff uncovered the SC-2020-740 suit against Defendant and spoke with landlord Lori Sanford by phone call on June 1, 2026, who confirmed Defendant had leased from them and caused damages but were unable to locate her for service of process.

43. Defendant intentionally omitted her tenancy with Sanford from her Premises application to conceal thousands of dollars in past due rent and property damages from Lessor.

44. Defendant intentionally provided false address history to Lessor in her Premises application to prevent Lessor from discovering thousands of dollars in past due rent and property damages.

45. Had Defendant listed her tenancy with Sanford on her Premises application, Defendant would have been required to admit she owed past due rent and Lessor would have declined Defendant's application for tenancy, avoiding the subsequent financial losses arising from the Lease and subsequent Note, which was later assigned to Plaintiff.

46. Had Defendant disclosed, or Lessor uncovered, any fraudulent sworn answers within her Premises application, Lessor would have declined Defendant's application for tenancy, avoiding the subsequent financial losses arising from the Lease and subsequent Note, which was later assigned to Plaintiff.

47. Had Lessor uncovered any fraudulent sworn answers during the tenancy within her Premises application, Lessor would have taken accelerated legal action to mitigate financial losses arising from the Lease and subsequent Note, which was later assigned to Plaintiff.

48. On August 15, 2026, Defendant filed her Chapter 7 Bankruptcy Petition with the U.S. Bankruptcy Court for the Western District of Oklahoma under 26-12811-SAH.

49. Defendant made materially false representations in her rental application for the purpose of inducing Lessor to approve the tenancy and the resulting Lease and Note.

50. Lessor reasonably and justifiably relied upon Defendant's verbal and sworn representations in entering into the Lease and Note transactions, and Plaintiff, as assignee of the resulting Note obligation, holds the debt arising therefrom.

51. As a direct and proximate result of Defendant's false representations and omissions, Plaintiff was damaged in the amount the Court under CJ-2022-5092 entered judgment in favor of Plaintiff and against Defendant for the sum of $18,057.71 plus costs and contractual interest (10%) from June 4, 2025 until paid.

52. As of August 15, 2026, Defendant owes Plaintiff under CJ-2022-5092, the sum of $18,662.39 including principal, interest and costs, net of prior payments and adjustments, plus costs and contractual interest (10%) from August 15, 2026, until paid.

53. 11 U.S.C. § 523(a)(2)(A) excepts from discharge debts for money, property, services, or credit obtained by false pretenses, false representation, or actual fraud.

54. 11 U.S.C. § 523(a)(2)(B) except from discharge debts for money, property, services, or credit obtained by use of a statement in writing: (i) that is materially false; (ii) respecting the debtor's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

55. 11 U.S.C. § 523(c)(1) requires a creditor to obtain a court determination, rendered after notice and a hearing, for debts asserted under § 523(a)(2).

**FIRST CAUSE OF ACTION - Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)**

56. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

57. Defendant made representations and engaged in false pretenses by phone, in writing and or within her October 2020 Premises rental application, concerning her prior residential history, past-due status, employment history, employment status, financial stability, and income.

58. Said Defendant representations were materially false.

59. At the time the representations were made, Defendant knew they were false, and related but not limited to her: ability to pay rents, stay employed, remain financially stable, maintain the Premises and utilities, impending landlord creditor and collection activities, recent breaches in contractual rental obligations and recent skip out.

60. Defendant made the representations with the intent and purpose of deceiving Lessor into approving her Premises rental applications, executing the Lease, delivering possession of the Premises, and the attendant extension of credit embodied in the Note transaction.

61. Lessor justifiably relied on Defendant representations in approving their tenancy and entering into the Lease and Note.

62. Defendant made false representations and engaged in false pretenses concerning her intent to pay the Note according to its terms. Defendant's intent to deceive is established by the totality of the circumstances, including but not limited to her: Lease and Note negotiations, execution of the Lease and Note and the timing thereof, inducement by way of the false impressions left by inaccurate dates and circumstances of address and employment history, and total failure to make any payments until after garnishment, all to Plaintiff's detriment.

63. The resulting debt evidenced by the Note, which Lessor assigned to Plaintiff, were obtained by false pretenses, false representations and or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

64. Plaintiff has been damaged by Defendant's fraud in an amount to be determined at trial, presently believed to be not less than $18,662.39 plus costs and contractual interest (10%) from August 15, 2026, until paid.

**SECOND CAUSE OF ACTION - Nondischargeability Under 11 U.S.C. § 523(a)(2)(B)**

65. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

66. Additionally, or on the alternative, to the extent any statement respecting Defendant's or an insider's financial condition is determined to be at issue, Defendant caused to be made or published a statement in writing that was materially false, respecting her financial condition, on which Plaintiff reasonably relied, and which Defendant caused to be made or published with intent to deceive.

67. Any such debt is nondischargeable under 11 U.S.C. § 523(a)(2)(B).

68. Plaintiff has been damaged by Defendant's false written financial condition statement in an amount to be determined at trial, presently believed to be not less than $18,662.39 plus costs and contractual interest (10%) from August 15, 2026 until paid.

###

WHEREFORE, Plaintiff, Ian's Enterprise, LLC, requests judgment against Defendant, Gabby Rae Mason f/k/a Gabby Rae Sears, as follows:

1. Determining that the Note and judgment entered in the Oklahoma County, Oklahoma District Court under CJ-2022-5092 in favor of Plaintiff and against Defendant in the amount of $18,057.71, with a balance of $18,662.39 plus costs and contractual interest (10%) from August 15, 2026 until paid, is nondischargeable and excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and or (B);
2. Upon motion and if Plaintiff prevails, an award for reasonable attorneys' fees pursuant to the Note and as allowed by law; and
3. For such other relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Amanda R. Blackwood

Amanda R. Blackwood, OBA #33839
BLACKWOOD LAW FIRM, PLLC
512 NW 12th Street
Oklahoma City, OK 73103
405.309.3600 -Telephone
405.378.4466 – Facsimile
amanda@blackwoodlawfirm.com – Email
**ATTORNEY FOR PLAINTIFF**

Approved by:

Ian Rupert, Ian's Enterprise LLC